DAVID H. BOUIC, Executor of MARY A. WILSON
vs. LUCINDA MAUGHT.

*Action for Services—Right to Compensation—Instruction
to Jury.*

In an action to recover for services rendered as nurse to an aunt
who was an invalid for several years immediately preceding her
death, and part of the time quite helpless, an instruction that,
if certain facts were found to exist, the jury might find an implied
promise to pay, without saying that, if they should so find, the
plaintiff would be entitled to recover, simply proceeded to declare
that "the plaintiff was entitled to recover what the jury might
believe from the evidence such services were worth," although
not critically accurate, was not misleading.

APPEAL from the Circuit Court for Montgomery
County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial below the plaintiff offered the
two following prayers:

1. If the jury believe from the evidence in the case
that the plaintiff rendered the services to the testatrix of
the defendant, and that under all the circumstances of
the case the services were of such a character as to lead
to a reasonable belief that it was the understanding of
the plaintiff and the testatrix of the defendant that pe-
cuniary compensation should be made for them, then the
jury may find an implied promise, and the plaintiff is
entitled to recover what the jury may believe from the
evidence in the case such services were worth.

2. If the jury believe from the evidence that Mary A.
Wilson, the defendant's testatrix, died on or about the
26th day of January, 1891, and that within twelve months

before the death of said Mary A. Wilson she stated that she wanted the plaintiff paid or well paid for her services, then no part of the plaintiff's claim is barred by the Statute of Limitations if they believe from the evidence that the plaintiff has no other claim against the said decedent than the one presented in this case.

The defendant offered twelve prayers. The following only need be reported:

5. If the jury believe from the evidence that the plaintiff told the decedent that she was not waiting upon her for money; and further believe that when the decedent offered her ten dollars for what she had done, if the jury so find, and the plaintiff declined to accept any pay for her said services, and then and there again stated to the decedent that she was not waiting on her for money, that then the jury are authorized to conclude that the plaintiff was not waiting on the decedent for the sake of and with the expectation of pecuniary compensation, but as a matter of affection and gratuity, and if the jury so find, then their verdict must be for the defendant.

6. If the jury believe from the evidence that the plaintiff was in the service of her mother, with whom the decedent boarded, and that her duties in such service required her to do such general work about the house as was necessary for the care and comfort of the decedent, as a boarder, and that the plaintiff was not requested by the decedent but chose to perform additional services for said decedent boarder, the plaintiff is not entitled to recover unless the jury further find that said services were rendered with the expectation and promise of pecuniary compensation.

7. If the jury believe from the evidence that the decedent was a boarder in the home of the plaintiff's mother, and that said plaintiff and decedent also resided continuously in said home, and that plaintiff was assisting her mother in conducting said house and furnishing said

board and that the services received by the decedent were no more than she as a boarder was entitled to receive, then the plaintiff is not entitled to recover.

8. If the jury believe from the evidence that the decedent, the plaintiff and the plaintiff's mother composed one family, and were living together as a family, and that the services rendered by the plaintiff were owing to her relationship and connection with the decedent and without any promise on the part of the decedent of remuneration, the plaintiff is not entitled to recover.

11. If the jury believe from the evidence that the decedent stated she wished the plaintiff well paid, and that at the time she so stated she was referring solely to the services that the plaintiff rendered to her during her last illness, and had no reference to services the plaintiff may have rendered previously thereto, then the jury are instructed that all items of the plaintiff's account of more than three year's standing before the institution of this suit are barred by the Statute of Limitations, and the plaintiff cannot recover on such items of her account.

12. If the jury believe from the evidence that some portion of the plaintiff's claim accrued due more than three years before the institution of this suit, then the plaintiff cannot recover for such portion under the pleadings in this cause, unless they shall further find that the defendant or his testatrix promised to pay the same within three years before the bringing of this suit.

The first, second, third, and fourth prayers of the defendant were conceded by the plaintiff. The Court (Lynch and Vinson, J.,) granted the prayers of the plaintiff, and the ninth, tenth, and twelfth prayers of the defendant, and rejected his fifth, sixth, seventh, eighth, and eleventh prayers. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, PAGE, McSHERRY, and BRISCOE, J.

*William Veirs Bouic, Jr.*, and *Thomas Anderson*, for the appellant.

*James B. Henderson*, (with whom was *George Peter*, on the brief,) for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought by the appellee to recover of the appellant for services and attention rendered to the appellant's testatrix in her life-time, as nurse. It appears that the testatrix was an invalid for several years immediately preceding her death, and part of the time quite helpless, being dependent upon the assistance of others for all her movements. She was an unmarried lady, and she boarded with her sister, the mother of the appellee, from the year 1866 to the time of her death in January, 1891. The appellee had, prior to 1886, lived with relations of hers in Frederick County, but in the last mentioned year she returned to her mother's home in Montgomery County, and there finding her aunt sick and needing special care and attention, she became her nurse and assistant; and her claim for such services, at the rates charged in the bill of particulars, amounted to $1,368; and she recovered to the extent of $1,050. The defences interposed were, never promised or never indebted as alleged, payment, and the bar of the Statute of Limitations.

The case is presented here upon the rulings of the Court below with respect to the prayers of the respective parties offered for instructions to the jury.

The case appears to have been fully and fairly submitted to the jury, by whom all the facts of the case have been considered, and a conclusion drawn therefrom in

favor of the appellee.    We are not called upon or author-
ized to review the facts of the case, farther than to see
that there was evidence upon which prayers could be
based.    We can only determine whether the rulings
upon the prayers, presenting propositions of law, are
correct or not, when examined in reference to the evi-
dence before the jury.

If the work and services rendered were merely gratui-
tous, and performed for the testatrix with no view of
compensation therefor, of course, there could be no legal
demand, and no right to recover for such services.    But,
in the absence of an express contract, the relation of the
parties in this case does not repel an implied contract to
pay for valuable services rendered to and accepted by
the testatrix, if it be not affirmatively shown that such
services were intended to be gratuitous.    It is not to be
inferred, simply from the relation that existed in this
case between the parties, that the services were intended
to be gratuitous, and were rendered with no view of com-
pensation.    Nor is there any evidence in the case to show
that the contract for boarding in the house of the mother
of the appellee, included the compensation to a nurse to
the invalid boarder, who required special and particular
care and attention in her infirm and dependent condition
of health.    The question of the implied obligation to
pay for the services rendered depended entirely upon the
consideration of all the circumstances of the case.

The two prayers offered by the appellee were granted,
and we think there was no substantial error in this rul-
ing of the Court.    The first of these prayers was based
upon what was ruled in the case of *Bantz, Ex'r vs. Bantz,
et al.*, 52 *Md.*, 693; and the second related to the Statute
of Limitations as applied to the facts of this case.

It is true, the first of these prayers is not critically
accurate; but we think its meaning is sufficiently clear
to avoid misleading the jury.    It says that if certain

facts were found to exist then the jury *might* find an implied promise; and without saying, *that if they should so find*, the plaintiff would be entitled to recover, the prayer simply proceeds to declare, "and the plaintiff is entitled to recover what the jury may believe from the evidence such services were worth." There was no exception taken to the form of the prayer, and we do not think the verbal omission or inaccuracy was calculated to mislead. The instruction was almost literally copied from that given in the case of *Guild vs. Guild*, 15 *Pick.*, 129, and which was quoted and approved in the case of *Bantz vs. Bantz, supra.*

The second prayer of the appellee granted by the Court, when read in connection with the twelfth prayer of the appellant, also granted, fully instructed the jury upon the subject of the bar of the Statute of Limitations; and the appellant was thereby given the full benefit of that defence before the jury.

The first, second, third and fourth prayers of the appellant were conceded by the appellee; and the ninth, tenth, and twelfth prayers of the appellant were granted by the Court; and the others were rejected.

With respect to the rejected prayers we discover no error. Prayers must be granted with reference to the evidence in the case. Mere speculative propositions as to matter of fact should not be allowed to be submitted to the jury, because, if for no other reason, they tend to mislead. The isolated facts stated in the fifth prayer, would have submitted the case to the jury without reference to *all the circumstances of the case,* and therefore excluded other facts than those referred to in the prayer; and there was no sufficient evidence upon which to base the hypotheses of the sixth and seventh prayers of the appellant; and there is nothing in the case to justify the submission to the jury of any such question as that embodied in the eighth prayer of the appellant. Nor is

there anything in the case to justify the form of the eleventh prayer of the appellant—that prayer fixing no definite time of the making of the statement of the deceased referred to, and excluding all other acknowledgments of the claim. The prayer in its generality was well calculated to mislead, and therefore properly rejected. In the prayers granted at the instance of the appellant, the latter would appear to have obtained instructions that fully embraced and secured to him, for the consideration of the jury, the benefit of the entire defence made to the action by the evidence. The judgment must therefore be affirmed.

*Judgment affirmed.*

(Decided 7th December, 1892.)