# LAURA V. FRANCIS

## *vs.*

# CHARLES W. OUTLAW.

*Husband and wife: alienation of affections; damages; suit
against wife's parents; burden of proof; to show
malice; parents' rights. Prayers: with-
drawing case from jury.*

An action by a husband will lie against anyone who has
wrongfully alienated the affections of his wife and deprived him
of his conjugal rights.                    p. 316

But in suits of that character against one of his wife's par-
ents, the burden of proof is upon the plaintiff to show that the
defendant was prompted by malice in what he had said or done,
and the plaintiff must overcome the presumption that the actions
complained of were due merely to what the defendant believed
to be for the real good of his child and under the influence of
natural affection for her.                    pp. 317-318

In deciding this question of taking a case from the jury, the
Court should first assume the truth of all the testimony given
to the jury, tending to sustain the plaintiff's right to recover,
and of all inferences of fact fairly deducible therefrom; and if,
upon consideration of such evidence, it is found of sufficient
probative force to enable an ordinary intelligent mind to draw
a rational conclusion therefrom in support of the plaintiff's
right to recover, the evidence is properly submitted to the jury,
by whom its weight and value is to be determined.          p. 319

*Decided January 11th, 1916.*

Appeal from the Superior Court of Baltimore City. (Soper, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Vernon Cook* and *Charles Markell* (with a brief by *Haman, Cook, Chesnut & Markell*), for the appellant.

*S. S. Field,* for the appellee. ·

Pattison, J., delivered the opinion of the Court.

The appellee in this case, Charles W. Outlaw, recovered a judgment in the Superior Court of Baltimore City against his wife's mother, Mrs. Laura V. Francis, the appellant, for alienation of his wife's affections, and it is from that judgment this appeal is taken.

The right of a husband to maintain an action against anyone who has wrongfully alienated the affections of his wife and deprived him of his conjugal rights, is now well established by a long line of decisions starting at least so early as the case of *Winsmore* v. *Greenbank,* Willes Reports, 577, decided in 1745; *Wolf* v. *Frank,* 92 Md. 138; *Hutcheson* v. *Peck,* 5 Johns. 196; *Oakman* v. *Belden,* 94 Me. 280; *Smith* v. *Lyke,* 13 Hun. 204; *Holtz* v. *Dick,* 42 Ohio St. 23; *Westlake* v. *Westlake,* 34 Ohio, 621; *Rice* v. *Rice,* 104 Mich. 371; *White* v. *Ross,* 47 Mich. 172; *Tucker* v. *Tucker,* 74 Miss. 93; *Payne* v. *Williams,* 4 Baxt. 583; *Glass* v. *Bennett,* 89 Tenn. 478; *Brown* v. *Brown,* 124 N. C. 19; *Huling* v. *Huling,* 32 Ill. App. 519; *Reed* v. *Reed,* 6 Ind. App. 317; *Multer* v. *Knibbs,* 193 Mass. 556; *White* v. *White,* 101 Minn. 451; *Lockwood* v. *Lockwood,* 67 Minn. 476; *Klein* v. *Klein,* 11 N. W. Rep. 367; *Harvey* v. *Harvey,* 75 Neb. 557; *Ger-*

*nerd* v. *Gernerd,* 185 Pa. St. 233; *Zimmerman* v. *Whiteley,* 134 Mich. 39; *Bennett* v. *Smith,* 21 Barb. 439; *Corrick* v. *Dunham,* 147 Iowa, 320; *Eagon* v. *Eagon,* 60 Kan. 697.

The law applicable to this class of cases ·is well stated in the case of *Multer* v. *Knibbs, supra,* which was a suit instituted by the husband against the parents of the wife for the alienation of her affections. In that case the Court ordered a verdict for both of the defendants; upon appeal the Court sustained the verdict as to the mother, because of a want of evidence against her, but as to the verdict in favor of the father the Court said: "In suits of this kind, brought by a husband against the father of his wife, upon the allegations that the defendant has enticed the plaintiff's wife away from him, alienated her affections, persuaded and induced her not to live with him, and has harbored, secreted and concealed her, it is not (as it might be in an action against a stranger) enough to show that the defendant has actually performed the acts charged, and that they have resulted in an abandonment of the plaintiff by his wife. * * * It is proper for him to give to his daughter such advice· and to bring such motives of persuasion or inducement to· bear. upon her as he fairly and honestly considers to be called for by her best interest; and he is not liable to her husband in damages for her desertion resulting therefrom, unless he has been actuated by malice or ill-will toward the plaintiff, and not by a proper parental regard for the welfare and happiness of his child, in such an action, the material question is the. intent with which the parent acted, rather than the wisdom or even the justice of the course which he took. These questions have arisen in other jurisdictions; and so far as we have been able to discover, they always have been answered in the same way. The leading case is *Hutcheson* v. *Peck,* 5 Johns. 196; and the doctrine there laid down has commanded assent. * * * And the burden is upon the plaintiff to show that the defendant has been prompted by malice in what he has said and done, and to overcome the presumption that he

acted under the influence of natural affection, and for what
he believed to be the real good of his child. *Bennett* v. *Smith,*
21 Barb. 439; *Pollock* v. *Pollock,* 9 Misc. 82, N. Y. Supp.
37; *White* v. *Ross; Westlake* v. *Westlake; Brown* v. *Brown,*
*supra; Young* v. *Young,* 8 Wash. 81, 35 Pac. 592; *Reed* v.
*Reed, supra.* But if there is *evidence upon which the jury*
*would have a right to find* that the defendant has actively
interfered to cause his daughter to abandon her husband, and
has deprived him of her affections and of the comfort and
solace of her society, and has done this from malice to the
plaintiff, and not for the purpose of affording proper pro-
tection to his child and furthering her true welfare, *then the*
*case must be left to the jury,* with the instruction that, if
these facts are proved, the action may be maintained. *Holtz*
v. *Dick, supra; Price* v. *Price,* 91 Iowa, 693; *Tucker* v.
*Tucker* and *Bennett* v. *Smith, supra; Williams* v. *Williams,*
20 Colo. 51; *Railsback* v. *Railsback,* 12 Ind. Appeals, 659.
This was recognized by all the Judges in *Hutcheson* v. *Peck,*
5 Johns. 196. The question, accordingly, is whether there
was such evidence in this case." The italics in the above
quoted parts of the opinion in that case are ours.

In the case before us the defendant at the conclusion of
the testimony offered four prayers. By the first, she asked
the Court to instruct the jury that there was no evidence in
the case legally sufficient to entitle the plaintiff to recover.
The second prayer asked that the jury be instructed that they
"can not find a verdict for the plaintiff unless they find not
only that the defendant so influenced her daughter, Laura,
as to alienate her affections from the plaintiff, but that in so
influencing her daughter the defendant acted willfully and
with malice toward the plaintiff." By the third prayer, the
Court was asked to instruct the jury "that to establish mal-
ice on the part of the defendant, it is not sufficient to show
that the defendant advised her daughter or even gave mis-
taken advice, but it must affirmatively appear that the de-
fendant influenced her daughter, and that such influence

was exercised with malice and not in an honest effort, whether mistaken or not, for her daughter's welfare"; and the Court was asked by the fourth prayer to instruct the jury "that malice on the part of the defendant in advice to or influence over her daughter, whether before or after marriage, is never presumed; that a mother at all times has a right to counsel and advise her children, married or unmarried, and that all advice or counsel given by a mother to her children, married or unmarried, is presumed to have been given in good faith and without malice, unless the contrary affirmatively appears."

The Court being of the opinion that the evidence offered was legally sufficient to go to the jury tending to show that the defendant had alienated the affections of the wife for her husband, and that in so doing she was moved by malice and ill-will to the plaintiff and not in an honest effort for her daughter's welfare, refused to grant the defendant's first prayer taking the case from the jury, but granted the defendant's second, third and fourth prayers.

The sole question before us upon this appeal, is whether the Court was right in its refusal to grant the defendant's first prayer asking that the case be taken from the jury for want of legally sufficient evidence.

In deciding this question, the Court was first to assume the truth of all the testimony given to the jury, tending to sustain the plaintiff's right to recover, and of all inferences of fact fairly deducible therefrom, in *Leopard* v. *C. & O. Canal,* 1 Gill, 229; *Hiss* v. *Weik,* 78 Md. 445; and if, upon consideration of such evidence, it was found of sufficient probative force to enable an ordinary intelligent mind to draw a rational conclusion therefrom in support of the plaintiff's right to recover, the evidence was properly submitted to the jury, by whom its weight and value was to be determined. *Baltimore Elevator Co.* v. *Neal,* 65 Md. 459; *Jones* v. *Jones,* 45 Md. 154; *Mallette* v. *British Assurance Co.,* 91 Md. 481; *Moyer* v. *Justis,* 112 Md. 222; *Taxicab Co.* v. *Emanuel,* 125 Md. 259.

The plaintiff was married to the daughter of the defendant on the 14th day of December, 1907, and the final separation occurred on the 27th day of July, 1911. When first married the wife with her husband went to live at the home of the defendant, at Relay, Baltimore County, Md., but the plaintiff, a traveling salesman in the far South, was out of the City of Baltimore much of his time, and consequently was at the house of the defendant only at intervals throughout the year. After 1909 the plaintiff, for reasons stated in the evidence, ceased to make his home with the defendant, although his wife and their child continued to live with her mother, and it was only for three short intervals of time in the latter years of their married life, that the wife lived away from the home of her mother, and that was while living with her husband in or near Baltimore.

· The final separation of the plaintiff and his wife occurred as we have said on the 27th day of July, 1911, when the wife left the house occupied by her and her husband, and returned to the home of her mother.

On the first day of September following, proceedings were instituted by her asking for a partial divorce from the plaintiff, and for counsel fees and alimony. She subsequently amended her bill, and asked only for counsel fees and alimony. The case was heard by Judge Burke in the Court below, and was decided adversely to the wife. An appeal was taken to this Court (*Outlaw* v. *Outlaw,* 122 Maryland, 695), and the decree of the Court was affirmed. But the wife was thereafter granted a divorce from the plaintiff, in proceedings instituted by her in Reno, Nevada, that were pending at the time the aforesaid case was before us on appeal. The record in the former case, a very large one, contains most of the evidence in this case, and because of the character of the evidence this Court ordered that the case be not reported.

It is clearly disclosed by the record in this case that the plaintiff at one time possessed and enjoyed the affection and

society of his wife, and it is equally clear that these are no longer possessed and enjoyed by him. This much having been determined, we are now to decide whether the evidence offered is legally sufficient to go to the jury tending to show that the affections of the wife for her husband were alienated by the defendant, and if so, whether she in so doing was actuated by malice towards the plaintiff.

As the evidence in the former case embraces practically all the evidence in this case, we have, as a matter of fact, twice read and considered this evidence; in the first case to determine the issues there presented, and in this case to decide the questions here raised, and it is upon such an examination and consideration of the evidence that we have reached the conclusion that there is evidence found in the acts and words of the defendant, legally sufficient to go to the jury tending to show that the affections of the wife for the plaintiff were alienated by the defendant and that in so doing she was actuated by malice toward him. As no good purpose would be served thereby, we will not give a detailed statement of such evidence, consisting as it does of things said and done at different times during nearly the entire period of the married life of the plaintiff, forming an unsavory record of "marital troubles and family dissensions, which may well be allowed to rest in the obscurity of the record."

The judgment of the lower Court will therefore be affirmed.

*Judgment affirmed, costs to the appellee.*