# W. W. PARKER

*vs.*

# CARROLL POWER.

*Prayers: withdrawing case from jury; no evidence; duty of Court. Brokers: when entitled to commissions.*

In passing upon the question whether a case should be withdrawn from the consideration of the jury, the court need only consider the plaintiff's testimony, even though it should be in conflict with that of the defendant; it being assumed, on such questions, that the plaintiff's evidence, tending to sustain his right to recover, is true. pp. 605-606

The test to be applied in determining the legal sufficiency of such evidence is whether it is of sufficient probative force to enable an ordinary intelligent mind to draw a rational conclusion therefrom in support of the plaintiff's right. p. 606

A broker who fully discharges his duty and performs all that he undertakes to do, is entitled to recover for his services, without regard to the fact whether or not such services were beneficial or of value to his employer. p. 609

*Decided January 19th, 1916.*

Appeal from the Circuit Court for Howard County. (FORSYTHE, JR., J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*J. R. M. Staum* submitted a brief for the appellant.

*James Clark,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the action was brought to recover three hundred and seventy-five dollars alleged to be owing by the appellee to the appellant, as commissions, for procuring for him a loan of seven thousand and five hundred dollars.

The case was tried by jury in the Circuit Court for Howard County, and at the conclusion of the testimony offered by the plaintiff and defendant the case was taken from the jury under the instruction that there was no legally sufficient evidence entitling the plaintiff to recover. Other prayers were offered but were not acted upon and the only exception found in the record is to the granting of the aforesaid prayer.

The evidence of the plaintiff discloses that the defendant, an officer of the United States Army, after some correspondence with the plaintiff, a member of the Baltimore City Bar, called at the latter's office in the City of Baltimore, in the early part of May, nineteen hundred and thirteen, and as the plaintiff testified "he told me that he had looked at two places in Howard County, one of which he would buy, and he asked me if I would loan him a certain amount on an inheritance of his wife in New York, and a certain amount of money on one or the other of the two places he would buy." It seems that on this occasion no definite answer was given him, but on the defendant's second visit to the office of the plaintiff, the party having the money to loan, Mr. Mc-Colgan, was sent for and was introduced to the defendant and he told Captain Power, the defendant, that he did not care to loan any money on the inheritance, but that he would loan upon either of the farms that the defendant might purchase. The plaintiff states in his testimony that he at that time "informed Captain Power that this loan would be subject to the usual interest and commission." This he says was satisfactory to the defendant and he with Mr. McColgan visited the farms mentioned. At the first farm visited by them they learned that the wife of the owner, Mr. Earp, was *non compos mentis* and because of this fact they gave no

further thought to a loan upon that property. They next visited the farm owned by William I. Harding, and after examining it, they concluded that they "could loan" upon it six thousand dollars, and communicated this fact to the defendant.

At this time it seems Mrs. Harding was not willing to join with her husband in a conveyance of the farm to a purchaser, but later, on May 23rd, 1913, the defendant sent to the plaintiff from Port Caswell, N. C., the place at which he at the time was stationed, the following telegram—"Mrs. Harding has agreed to convey; husband gives her one-third purchase money; have arranged for ten thousand from estate; will you loan six thousand first mortgage, wire reply my expense." To which telegram plaintiff on the same day wired reply—"Will accept loan of $6,000 subject to usual commission 5% and title fee," and in response thereto the defendant, on June 2nd, wired plaintiff "Will accept loan on terms offered, letter in full today." The following is the letter referred to:

"Fort Caswell, N. C., June 2nd, 1913.

"Mr. W. W. Parker,

"Attorney-at-Law,

"Baltimore, Md.

"My Dear Sir:

"Confirming my telegram of this date, beg to advise that we would want the loan requested, sometime between now and June 30th. I am expecting in the mail today the $10,000.00 that is to be advanced on the interest in the estate, and the contract with Mr. and Mrs. Harding is ready to be signed as soon as the deposit of $1,500.00 is forwarded, which will be done as soon as this money is received. Mr. and Mrs. Harding arranged their difference by an agreement whereby Mrs. Harding will receive one-third of the purchase money in lieu of her dower rights. This disposes of her objection to signing and under the contract, which both will sign, they will give a deed not later than June 30th.

"We have concluded to ask for a loan of $8,000.00 and will take a loan for that amount if you and Mr. McColgan will advance that sum. We are paying $14,000.00 and this will give us about $4,000.00 above the purchase price all of which will be used in making permanent improvements on the place and in purchasing brood mares and other necessary live stock. * * *

"I will advise you as soon as the contract is signed so that you can go ahead and examine title. I suppose you can send the mortgage to us here for acknowledgment, so it can be returned to you before the deed is signed. You can then pay over the money to the Hardings upon execution of the deed and date the mortgage same day; or will you want us to come to Baltimore for that purpose?

"With kind regards, and hoping I will soon be a resident of your State, I am, ·

"Very truly yours,

"Carroll Power."

Upon the receipt of the aforesaid letter the plaintiff submitted to McColgan the request for a loan of $8,000.00, but he declined to lend more than $6,000.00 upon the property.

The plaintiff then took the matter up with another client Frank R. Rutter of Washington, D. C., and on June 12th wrote defendant saying:

"I have written my client recommending a loan of $7,500.00 on your property in Howard County to be made subject to the usual commission of 5% and title fee and at the rate of six *per cent.* interest per *annum.*

"This loan I have offered to another client than Mr. McColgan who will accept it, I feel sure, upon my recommendation, and when he shall do so I shall have Mr. McColgan abandon the other loan of $6,000.00, which he previously agreed to take.

"Kindly forward me reference to the title at once, so I may proceed with the examination and prepare the necessary papers, forwarding them to you for execution."

Mr. Rutter, as the plaintiff testified, "agreed to make the·
loan of $7,500.00 upon the property and this fact was told to
Captain Power, upon his next visit to the plaintiff's office.
On this occasion the plaintiff says that he and the defendant
"had a long talk about it," and when asked to state what
was said on that occasion he said "The substance of the talk
was that I had secured the loan for him, and would be ready
to put it through when he wanted it." Q. "Did Captain
Power agree to accept that loan?" A. "Yes, sir; subject to
the usual commissions." Q. "What were the usual commis-
sions?" A. "A commission of 5% for securing a loan, a
title fee for examining the title, and interest at six *per cent.*
per annum."

The plaintiff not hearing from the defendant wrote him on
July 9th saying:

"I have been holding $7,500.00 for you since the
middle of June. This money I have had an oppor-
tunity to invest several times, but I have not heard
from you lately as to when you will want to use the
same.

"Accordingly, I am writing to know when you will
wish the use of this money, because I am charging
you with interest on the same from the time you told
me you would want it."

In answer to this letter Captain Power wrote him from
Port Caswell, N. C., on July 12th, saying:

"Immediately after my return here, July 2nd, I was
sent off with my Company to the Western part of the
State and have only just returned. I find a letter
from the attorney for the Hardings declining the
proposition I made; and, as the loan on the estate is
still hanging fire I have decided that the time is evi-
dently not propitious and will drop the whole negotia-
tions for the present.

"Of course I realize that I have kept your money
waiting for investment and I will meet the interest
charge. Please make it as light as possible, however,
for I am already at large expense and have accom-

plished nothing. As soon as money conditions are more favorable and I can command either enough of the estate or a ready loan on same, since the 1 year will expire November 15th next, I will take up the matter again and put it through, either the Harding place or some other place in that general section, will look at your place in Howard County if not already sold."

On July 22nd the plaintiff answered the above letter saying:

"I am very much surprised to learn from your letter of the 12th inst. that you do not want the loan which I procured for you at your request upon the Harding Property in Howard County. * * * I am entitled to my commission for procuring it * * * . I am enclosing a bill for same amounting to $375.00, being 5% on $7,500.00 the amount I obtained for you which is still at your disposal."

The plaintiff received no answer to this letter and he again, on August 16th, wrote defendant asking him for the payment of his commission, and not hearing from this letter he again wrote him on September 1st, and received a reply thereto from Davenport, Ohio, dated September 5th, saying:

"Your letter in reference to your demand for a commission on a loan which was never made reached me while I was changing Station and I have not had time to answer.

"You must have construed my reference to the fact that I was willing to pay any loss of interest on the money which you claim was being held for me as an evidence that I was an easy mark, since you drop that claim for your alleged *client;* and come back with the astonishing demand for your own commission.

"Your claim has no foundation either in law or justice. You advertised that you had money to loan and I sought you in answer to that advertisement. I did not at any time commission you as my agent to seek a loan for me, but applied to you to get what you adver-

tised you already had. You stated to me your terms for making a loan would be the expense of title examination and five per cent. on the loan. You were fully aware at all times of the contingencies under which I was working and that the deal might not go through yet at no time during these negotiations did you claim to be acting for me, or tell me that you expected to be paid regardless of the completion of the transaction and any such intimation from you would have ended the negotiations then and there.

"I have no desire to avoid any honest obligation, but this demand for commission from you as my agent, when you advertised and held yourself out to me as having money to loan, for which you charged commission when loaned, is such a wide departure from right and justice that I decline to pay.

"You are of course at liberty to take any steps you deem proper."

The plaintiff testified upon cross-examination that it was not the understanding that the loan was to be accepted only in the event of the defendant purchasing the farm. He was then asked: "Q. And you say that at that time nothing was said by Captain Power about not taking the money unless he succeeded in buying one or two of the places mentioned? A. No, sir. Captain Power called to see me about a loan, and I sent for Mr. McColgan and introduced him to Captain Power. * * * Mr. McColgan was a man I knew had some money to loan and I sent for him and introduced him to Captain Power. Captain Power told Mr. McColgan about the inheritance in New York on which he wanted a loan and also about the farms. Mr. McColgan told him that he would not loan any money on the inheritance in New York; but that he was willing to loan money on either one of the two farms, which he might purchase. He had not purchased then, but he showed me photographs that he had taken and he told me he would buy one of the two farms. He asked me to find out how much I would loan on either one of them.

Q. You knew at the time didn't you, that Captain Power would not take the money unless he succeeded in buying one of these places? A. No, sir. What I understood from the negotiations, he wanted to see what was the best deal he could make. When I looked at the Earp Place, I understood there would be some difficulty in getting a deed for the Earp Place. Then I went to the Harding Place, looked it over and decided to advance $6,000.00 on that place. I communicated that information to Captain Power, and he accepted that loan. Q. According to your contention, you were employed without any contingencies? A. I knew, when the negotiations first began with Captain Power, that Mrs. Harding might not sign the deed, would not sign the deed. But I knew subsequently to that, and Captain Power so informed me, that he had purchased the place, that he wanted the loan; and that closed the transaction."

Mr. McColgan testified that when he was in the office of the plaintiff on the occasion referred to in the testimony of the plaintiff, that "Captain Power told Mr. Parker about two farms he was looking at, and asked him to see how much he would loan on either one of them, and he told Mr. Parker that if he made the loan he would pay him his commission." Upon cross-examination he testified that it was not the understanding that if the defendant did not get either of the farms he was not to take the loan.

Frank R. Rutter, who is connected with the Department of Commerce at Washington, testified that he, upon the recommendation of the plaintiff, agreed, in May or June, 1913, to loan unto Captain Power $7,500.00 on a farm in Howard County that was to be purchased by him. That the money to be loaned to the defendant "was received by him upon investments with interest paid up to the end of May and that he held it uninvested until September, when he was told by Mr. Parker that the loan was off, that up to such time he was prepared to make the loan."

In deciding whether this case should have gone to the jury on the evidence offered, we need only to consider the evidence

of the plaintiff, even though it be in conflict with that of the defendant as, we must assume, in deciding such question, the truth of the plaintiff's evidence, given to the jury, tending to sustain the plaintiff's right to recover. In *Leopard* v. *C. & O. Canal,* 1 Gill, 229; *Hiss* v. *Weik,* 78 Md. 445, the test to be applied in determining the legal sufficiency of such evidence is whether it is of sufficient probative force to enable an ordinary intelligent mind to draw a rational conclusion therefrom, in support of the plaintiff's right to recover; *Jones* v. *Jones,* 45 Md. 154, and other cases since decided, and if it is of such probative force, then it, with the other evidence in the case, should have been submitted to the jury and its weight and value considered and determined by it.

The contention of the defendant, as shown by his letter of September 5th, is that he never authorized the plaintiff, as his agent, to seek a loan for him. That the plaintiff had advertised money to loan and the defendant supposed that the money so advertised was his, and that he applied to him, not. as a broker, but as one to whom the money belonged. That the plaintiff stated to him his terms for making a loan would be "the expense of title examination and five per cent. on the loan." These charges, however, were to be paid only in the event of the loan being fully consummated, that is, in the event of the money being paid over and the relation of debtor and creditor thereby created between him, as the borrower, and the plaintiff as the lender, and as the loan was never so consummated, the plaintiff, as contended by the defendant, is not to be paid such charges.

The evidence of the plaintiff, however, is not in accord with the contention of the defendant. The plaintiff testified that on the occasion of the defendant's visit to his office, he sent for McColgan, a possible lender, and had him talk directly with the defendant, telling him what security he would require, and that he would not loan 'upon his wife's inheritance. At the same time the plaintiff told the defendant that he would expect to be paid a commission for making the loan. The defendant may have thought upon reading the

advertisement that the money mentioned therein was the plaintiff's money, but if the evidence of the plaintiff be true, and it is supported by the evidence of McColgan, he could not have thought after such meeting that the plaintiff was the lender. It is admitted by the defendant that the plaintiff was to be paid the expense of title examination and five per cent. on the loan, but this it seemed he did not regard as commissions.

The plaintiff also testified that the loan was not contingent upon the defendant's being able to buy one of the farms mentioned by him. He was told to ascertain and communicate to the defendant the amount that could be obtained as a loan upon each of these farms, that he, the defendant, was going to buy one of them, and that he would want a loan upon the one he bought. He was told, as he states, that a part of the purchase money was to be borrowed upon the inheritance of the wife, and he afterwards learned that Mrs. Earp, the wife of the owner of one of the farms, was thought to be of unsound mind, and incapable of joining with her husband in the conveyance of the farm to a purchaser, and that Mrs. Harding, the wife of the owner of the other farm, would not join her husband in a deed of conveyance therefor, but as he says, none of these obstacles were made conditions upon which the loan when obtained was to be accepted. He knew at the time negotiations were started, as he states, that Captain Power would not be able to buy either of these farms unless he could obtain a loan on the wife's estate in New York, but he was afterwards informed by telegram from defendant dated May 23rd, that these difficulties had all been removed. The telegram referred to being as follows: "Mrs. Harding has agreed to convey; husband gives her one-third purchase money; have arranged for ten thousand from estate; *will you loan six thousand first mortgage, wire reply my expense.*" This telegram was answered by the plaintiff saying: "Will accept loan of $6,000.00, subject to usual commission five per cent. and title fee," and the defendant replied to this telegram by wire of June 2nd, saying: "Will

accept on terms offered, letter in full today." This letter has
been set out in full in this opinion and in it may be found
this statement: "Confirming my telegram of this date, beg
to advise that we will want the loan requested, sometime be-
tween now and June 30th. I am expecting in the mail
today $10,000.00 that is to be advanced on the interest in
the estate, and the contract with Mr. and Mrs. Harding is
ready to be signed as soon as the deposit of $1,500.00 is for-
warded, which will be done as soon as this money is re-
ceived. Mr. and Mrs. Harding arranged their differences by
an agreement whereby Mrs. Harding will receive one-third
of the purchase money in lieu of her dower rights. This dis-
poses of her objection to signing and under the contract which
both will sign, they will give a deed not later than June 30th.

"We have concluded to ask for a loan of $8,000.00 and
will take a loan for that amount if you and Mr. McColgan
will advance that sum." As stated in the plaintiff's testi-
mony, Mr. McColgan would not take a loan on the farm for
more than $6,000.00 and the matter of a loan of $7,500.00
was then taken up with Mr. Rutter and he agreed to make
a loan at that amount. This fact was first communicated to
Captain Power by letter of June 12th, and was thereafter
more fully discussed on the occasion of a visit of the defend-
ant to the office of the plaintiff when Mr. Parker says that
he agreed to accept the loan subject to "a commission of five
per cent. for securing the loan, and title fee and examining
the title and interest at six per cent."

It will be recalled that the defendant had said in his letter
of June 2nd that he would want the money between that
date and the 30th of June, and as the plaintiff had not heard
from him at the date of his letter of July 9th, he wrote him
calling his attention to the fact that he was holding it for
him, and had been holding it for him since the middle of
June, and that he was charging him interest on same from
the time the defendant told him he would want it. There
was nothing said in the letter about commission, nor was it
at that time known by the plaintiff that the loan was not to

be accepted. In reply to this letter the defendant wrote on July 12th, saying: "I have decided that the time is evidently not propitious and will drop the whole negotiations for the present. Of course, I realize that I have kept your money waiting for investment and will meet the interest charge." It was not until the plaintiff's letter of July 22nd, in reply to defendant's letter of the 12th, that the defendant was called upon to pay commissions, and after writing two other letters the plaintiff received a letter from the defendant dated September 5th, refusing to pay said commissions, although he had, on July 12th recognized it seems an obligation resting upon him to pay interest on the money that he had kept waiting for such investment, strongly indicating, at least, that he knew the money had been obtained for such loan, and that it was being held for him.

The plaintiff, as both he and Rutter testified, procured the loan, that is the amount of money that the plaintiff desired as a loan, which the defendant had agreed to accept, and held such amount for the defendant until July 12th, when told by Power that the negotiations were off.

In the case of *Glenn & Co.* v. *Davidson,* 37 Md. 365, where the action was brought to recover broker's commissions for the negotiation of a loan, this Court said: "A broker who fully discharges his duty, and performs all that he undertook to do, is entitled to recover for his services, without regard to the fact whether such services were beneficial, or of value to his employer." *Kimberly* v. *Henderson,* 29 Md. 512; *Schwartze* v. *Yearly,* 31 Md. 270.

The evidence of the plaintiff, we think, has sufficient probative force tending to show the plaintiff's right to recover, to warrant its submission to the jury.

We will therefore reverse the judgment of the Court below.

*Judgment reversed and new trial awarded,*
*with costs, to the appellant.*