LYDIA NEALON *v.* HAROLD V. TRAVERS.
[No. 85, October Term, 1930.]

*Decided January 16th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*A. Freeborn Brown,* for the appellant.

*Ernest Volkart,* with whom was *Frederick Lee Cobourn* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the appellant, who sued her son-in-law, the appellee, in assumpsit on the common counts. The only exception is to the granting of the two prayers of the defendant (appellee), by which all of the items in the bill of particulars were excluded except one.

The bill of particulars claimed compensation for services as housekeeper, at $8 a week for 140 weeks from May 10th, 1927, to February 10th, 1930, $1,120; $280 for use of fur-

niture used by the defendant for the same period; use of household linens for 132 weeks, at $1 per week; washing and ironing aprons for 128 weeks, $1 per week; rendering lard for defendant's meat market for 72 weeks at $3 per week; $25 for a one-half interest in the furniture left by her daughter; $77.60 cash distribution to her as distributee of the daughter's estate; and $130.20 balance on a loan of $200 made by the appellant to the appellee in April, 1929. All of the items except the last were excluded by the prayers to which exception was taken.

The evidence on behalf of the plaintiff, none having been offered by the defendant, shows that for many years, the plaintiff, now seventy-one years of age, made her home with the defendant and his wife, the latter the plaintiff's daughter. Most of the furniture and linens were the plaintiff's; she having given up housekeeping to go with her daughter and son-in-law. Asked whether she ever paid any board to her son-in-law, she answered: "I didn't pay any board; but when there was work to be done I worked and helped her out—that is what I did."

The daughter was killed in an automobile accident, May 10th, 1927, and thereafter, down to the time of the trial, the son-in-law and plaintiff continued to reside in the same house, the plaintiff doing the cooking and all the housework except the washing. In addition to this, for several months each year after the daughter's death the plaintiff every week during the winter months rendered large quantities of lard for the defendant, who conducted a grocery store and meat market. She also washed and ironed aprons for use in the store and market. There is no doubt from the evidence appearing in the record that this woman was as much interested in the defendant's welfare as if he had been her own son; that she performed services for him that would have been very costly if he had hired strangers to do the work. In addition to the cooking and housekeeping, she made herself more or less of a drudge to help him along. But we cannot get any other impression from the record than that, continuing to live together as they did, without any other under-

standing than is usually found in the family relation, there was no expectation on the part of the plaintiff that she was to be paid, and none on the part of the defendant that he was expected to pay. It took them nearly three years to find that an arrangement which existed for many years when the daughter lived would not work indefinitely when she was gone.

The evidence in the case as to all items, except those for money loaned and for the share in her daughter's estate, brings this case within the principle of the case of *Krug v. Mills,* 159 Md. 670, at the present term of this court, in which the authorities are so exhaustively reviewed by Judge Digges that a rehearsal of them here would only amount to unnecessary repetition.

At the conclusion of the case the court granted two prayers at the instance of the defendant, designated second and third prayers. The second instructed the jury that the plaintiff had offered no legally sufficient evidence entitling her to recover "for services rendered as housekeeper, for use of plaintiff's furniture, for amounts claimed for services for rendering lard, for laundering aprons and coats, for use of plaintiff's linen, for use of plaintiff's furniture derived from the estate of Katie M. Travers," and that as to these items their verdict should be for the defendant. This prayer withdrew from the jury's consideration all of the items except that for money loaned. By the third prayer the court instructed "the jury that under the pleadings and evidence their verdict must be for the plaintiff in the sum of one hundred and thirty-one dollars and 95 cents ($131.95)," of which $1.75 was interest.

The first and final account of the appellee, as administrator of the estate of Katie M. Travers, passed by the Orphans' Court of Harford County April 21st, 1928, shows that he distributed to her mother, the appellant, a half interest in the daughter's furniture, $25, and $77.60 in cash. It was some time afterwards, the record does not disclose when, the appellant learned from an employee of the appellee that there was a check for her at the appellee's store. She

says that until then she did not know there was anything coming to her from the daughter's estate; that, after she asked the appellee about it, "He brought something once in his pocket—he took out a paper, laid it on the table and said: 'I can't get that cashed unless you sign it.' He never said what it was and I thought it was his check until he got that letter from Mr. Volkhart." She said, "it was face down," and she did not know what was on the other side. According to the evidence, a check for $77.60 appeared in the case with the plaintiff's indorsement on it. Her testimony was that she never received any of the money for which the check was given, and that, when she indorsed it, she thought it was the son-in-law's check, and that she had to indorse it so that he could get the money on it. There is no contradiction in the record of her statement that she did not get the money. There was evidence that the defendant owed the plaintiff $77.60 which he had not paid, and this item should have been submitted to the jury. While a check indorsed and cashed is *prima facie* evidence of payment to the payee by the maker of the amount herein named (*Brooke, Carroll's Adm'r. v. Quynn,* 13 Md. 379, 391; *Lineweaver v. Slagle,* 64 Md. 465, 487, 2 A. 693), as an unsealed receipt it is always open to explanation. *Hirons v. Hubbell,* 149 Md. 593, 605, 132 A. 645.

The item of $25, one-half interest in the daughter's furniture, should also have been submitted as a debt due the plaintiff from the defendant. Her testimony was that she did not know the defendant was administering on the daughter's estate, and that she did not know she was entitled to anything out of the estate until she heard there was a check for her at the defendant's store. The furniture is not mentioned in her testimony, and the only evidence of it we get is from the copy of the administrator's account offered in evidence, wherein it appears that the defendant charged himself with it as inventoried for $50, and then distributed a half interest in it to himself and the other half interest to the plaintiff at the inventory. If he intended to charge himself with it and keep it, as he appears to have done, he should

have distributed one-half of the inventoried price in cash to the plaintiff, and this item also should have been submitted to the jury. The distributive share in the furniture could not have been so made anyhow without the consent of the plaintiff. If the defendant did not wish to take it himself at the inventory and make the distribution to the plaintiff in cash, he should have sold it and converted it into cash and have made distribution of the proceeds.

Because there was error in instructing the jury that there was no legally sufficient evidence that the distributive share of the plaintiff in her daughter's estate had not been paid to her, and in limiting the right of the plaintiff to a recovery of the money loaned by the palintiff to the defendant, the judgment must be reversed.

*Judgment reversed, with costs to the appellant, and new trial awarded.*