MARY A. ROYCROFT, ADMINISTRATRIX, *v.* JAMES NELLIS

[No. 29, October Term, 1936.]

138

*Decided November 20th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Harry Leeward Katz* for the appellant.

*David J. Markoff*, for the appellee.

JOHNSON, J., delivered the opinion of the Court.
This is an appeal from a judgment rendered by the Bal-

timore City Court upon the verdict of a jury in favor of James Nellis, the appellee. The declaration contains six common counts, one of which is "for work done and materials provided by plaintiff for defendant's decedent at his request." The amended bill of particulars, filed in connection therewith, shows the basis of the plaintiff's claim to be for services rendered Andrew Gummer, appellant's decedent, from May 15th, 1932, to June 24th, 1935, consisting in preparing his meals, undressing, bathing, and dressing him, giving him alcoholic rubs several times a week, applying medicine to his legs and dressing them with bandages, and in general acting as an orderly in seeing to his daily and nightly needs and comforts, which services required his constant attendance, and also consisted in keeping his living quarters clean, doing his washing and ironing, acting as a companion and running errands and rendering all service required by decedent at fifteen dollars per week, no part of which was paid by the employer during his lifetime.

Andrew Gummer was a bachelor, approximately fifty-three years of age, and lived in Baltimore City all his life. From childhood he had been a cripple and was required to use crutches. Four years prior to his death on June 28th, 1935, he was not engaged in business and lived on Rose Street until November, 1932, at which time he moved to the second story of what might be described as a two-room apartment in a house on Fleet Street. During the last six months of his residence on Rose Street and throughout the time he resided on Fleet Street, appellee lived with him and allegedly rendered services, for which he claimed compensation in this suit.

During the course of the trial, appellant reserved five exceptions to the rulings of the trial court, the first four of which relate to rulings upon evidence, while the fifth concerns its action upon the prayers. We will at the outset consider the first group of these exceptions. One of the plaintiff's witnesses, Mrs. Gladys Boll, who lived on the first floor of the house in which Andrew Gummer lived throughout the year 1934 and until his death in

1935, had testified at length concerning the character of services Nellis performed for him. She saw Nellis and Gummer daily, and often conversed with Gummer. Plaintiff's counsel then asked her to tell some of the things she recalled with regard to those conversations. Her answer was that she used to ask him if he did not have any family or relatives, and he replied, "Yes, but none of my people visit me." Appellant objected to the answer and moved that it be stricken out, but the motion was overruled. We find no error in that ruling. The answer seems to be responsive, but, even if it were not, we fail to see how appellee was injured by it, in view of the further fact that other witnesses testified without contradiction that Gummer's relatives did not visit him.

In answer to another question, the same witness said: "He explained to me that Mr. Nellis had always looked after him for the past couple years, and he done everything in any way, shape, or form to make him comfortable and I told him I thought it was mighty nice that he had some one to look after him, but he said he expected when he left his property to pay Mr. Nellis for what he did."

The court overruled appellant's motion to strike out that answer, and this raises the second exception. The answer not only tended to show a rendition and acceptance of the plaintiff's services, but was also some evidence that Gummer himself expected to pay for them. There was no error in this ruling.

Later the witness was asked, "Did he tell you that he had paid Mr. Nellis anything at all for the work?" The court overruled defendant's objection to this question, and this raises the third exception. Even if this question was improper, there was no injury, since the answer was that Gummer made no statement as to whether he had made Nellis any payments for his services.

The fourth exception was taken to the refusal of the trial court to permit appellant to state the value of her decedent's estate. The sole issue for the jury's determination was whether the estate was indebted to the plaintiff, and if so, in what amount, and we fail to perceive

upon what ground an inquiry of this nature would have been relevant. The court acted correctly in sustaining an objection to this question.

The defendant offered three prayers, all of which were rejected, while the plaintiff offered one, which was granted. The defendant's first prayer reads as follows: "The defendant prays the court to instruct the jury that upon the pleadings and evidence of this case there is no evidence legally sufficient to entitle the plaintiff to recover and the verdict of the jury must therefore be for the defendant."

As a variance prayer, this instruction is defective under Code, art. 5, sec. 11, since it fails to state in what the variance consists. *Storrs v. Hink,* 167 Md. 194, 173 A. 66. However, since under many recent decisions of this court, cited in *Washington Rwy. & Elec. Co. v. Anderson,* 168 Md. 224, 227, 177 A. 282, similar instructions have been treated as demurrers to the evidence, we will consider it on that basis. It therefore, becomes necessary to examine the evidence in the case and apply the law frequently stated by this court in numerous decisions. If the evidence is such that under it a rational mind could find for the plaintiff, the prayer must be rejected, and in applying this rule, we are compelled to assume the truth of all facts and necessary inferences deducible therefrom which tend to support plaintiff's right to recover. *Moyer v. Justis,* 112 Md. 220, 76 A. 496; *Chapman v. Nash,* 121 Md. 608, 89 A. 117; *Parker v. Power,* 127 Md. 598, 96 A. 800; *Erdman v. Trustees Eutaw M. P. Church,* 129 Md. 595, 99 A. 793; *Fisher v. Finan,* 163 Md. 418, 163 A. 828; *Washington Rwy. & Elec. Co. v. Anderson, supra.*

There was evidence in the case tending to prove that the plaintiff, thirty-seven years of age, disposed of his interest in a produce business in May, 1932, and immediately thereafter went to nurse and look after decedent, who had previously, during the life of a sister, taken his meals at her home; that from the time plaintiff began living with Gummer, he remained there day and night, sleeping on a cot in the kitchen adjoining the other room

in which Gummer slept, and throughout this period rendered useful and valuable services of the character described in the bill of particulars, until decedent was taken to the hospital on June 24th, 1935, and that Gummer's condition was such as to require services of a nature so rendered, also that their reasonable value was thirty-five dollars per week; that decedent not only accepted such services, but in statements made to some of his neighbors a month before his death expressed himself as being well pleased with them and asserted that he would pay Nellis therefor when he disposed of certain property. It was further shown that Gummer departed this life on June 28th, 1935, and that letters of administration upon his estate had been granted appellant. If believed by the jury, this testimony was sufficient to support a verdict for the plaintiff, unless appellee, at the time the services were rendered, was a member of Gummer's family, the general rule in such cases being that the rendition of useful services to a party furnishes *prima facie* evidence of their acceptance, and in the absence of proof to the contrary raises an obligation to pay therefor at their reasonable value when no proof exists as to their special value. *Spencer v. Trafford,* 42 Md. 1, 20; *Bouic v. Maught,* 76 Md. 440, 444, 25 A. 423; *Wallace v. Schaub,* Adm'r, 81 Md. 594, 599, 32 A. 324; *Harper v. Davis,* 115 Md. 349, 353, 80 A. 1012; *Giering v. Sauer,* 120 Md. 295, 303, 87 A. 774; *Marx v. Marx,* 127 Md. 373, 375, 96 A. 544; *Provident Trust Co. v. Massey,* 146 Md. 34, 41, 125 A. 821; *Krug v. Mills,* 159 Md. 670, 672, 152 A. 493; *Nealon v. Travers,* 160 Md. 324, 326, 153 A. 44. See, also, *2 Labatt's Master & Servant* (2nd Ed.), sec. 666 (1); *Harlan's Domestic Relations,* page 116; 18 *R. C. L., Master & Servant,* sec. 46.

The plaintiff was in no manner related to Gummer, and the mere fact that he lived in his house with him in order to render the services for which he sought compensation is not evidence that he was a member of his family, as that term is defined by former decisions of this court, in the cases of *Pearre v. Smith,* 110 Md. 531, 534, 73 A.

141; *Elosser v. Fletcher,* 126 Md. 244, 249, 94 A. 776; *Jones v. Jones,* 146 Md. 19, 25, 125 A. 722; *Marx v. Marx, supra;* and *Krug v. Mills, supra.* See, also, *2 Labatt's Master & Servant* (2nd Ed.), secs. 579 to 582, inclusive, and *Harlan's Domestic Relations, supra.* The prayer, treated as a demurrer to the evidence, was therefore properly rejected.

The plaintiff's granted prayer reads as follows: "The court instructs the jury that if they find from the evidence in this case that the plaintiff served Andrew Gummer, deceased, in his lifetime, the fact of rendering such services furnished *prima facie* evidence of their acceptance by the said Andrew Gummer and in the absence of proof to the contrary raises an obligation to pay an amount equal to a reasonable value of the services rendered and if the jury shall find that such payment has not been made then the verdict of the jury must be for the plaintiff provided that they shall also find that the defendant is the administratrix of the said Andrew Gummer."

The suit was not defended on the theory that plaintiff was a member of Gummer's family and, as previously observed, the evidence in the case shows no such relation to have existed. The prayer therefore states a correct proposition of law under the decisions of this court hereinbefore cited, for, as said in *Harper v. Davis,* 115 Md. 349, 353, 80 A. 1012, 1014: "On the other hand, when no such relation exists between the parties as to bring the claimant within that rule, the law implies a promise to pay for services rendered and accepted, and the burden is on the party resisting the payment to show that no charge was to be made, if the rendition and acceptance of the services are proven."

The defendant's second prayer asked the court to instruct the jury that the "burden of proof is on the plaintiff to prove his case by preponderance of the evidence," while its third prayer was a repetition of the second, plus the words "and if testimony be such as to leave the minds of the jury in a state of even balance as to whether or not the plaintiff rendered to Andrew Gummer the services

he claims to have rendered and that the said Andrew Gummer accepted said services with the intention of paying for them, and in fact did not compensate the plaintiff for the said services, then the verdict must be for the defendant."

The vice of the second prayer consists in making the burden of proof applicable to all elements of the plaintiff's case instead of restricting it (a) to the rendition of the services by plaintiff; (b) non-payment therefor; and (c) the representative character of the defendant. For this reason its rejection was proper, since it was in conflict with the plaintiff's granted prayer. The same criticism applies to defendant's third prayer. It placed upon the plaintiff the burden of proving that Gummer accepted the services with the intention of paying for them, whereas no such burden rested upon him if the jury found that he rendered the services and had not been paid therefor, plus the additional fact that defendant was Gummer's administratrix.

Finding no reversible error in the rulings complained of, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to appellee.*