MAURICE MILLER, TRADING AS MILLER BROTHERS' SHOWS *v.* LOYAL ORDER OF MOOSE, LODGE NO. 358, OF MOOREFIELD, WEST VIRGINIA

[No. 32, April Term, 1941.]

*Decided May 20th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*William L. Wilson, Jr.,* with whom was *Edward J. Ryan* on the brief, for the appellant.

*Elmer B. Gower,* for the appellee.

COLLINS, J., delivered the opinion of the Court.

Loyal Order of Moose Lodge No. 358, of Moorefield, West Virginia, on August 12th, 1940, made a written agreement executed "by Loyal Order of Moose Lodge 358, Party of the second part: By. W. D. Grafton, Secy.; By Clyde Bean," with Morris Miller, doing business under the name of Miller Bros. Shows, executed in the following manner: "Miller Bros. Shows, Inc., By Wm. C. Murray, Gen. Agt., Party of the first part." This agreement provided among other thing that Miller Bros. Shows would exhibit in the town of Moorefield West Virginia, for the Moose Labor Day Celebration from September 2nd 1940, to September 7th, 1940, and that the appellee would receive not less than $250 from all sources and that if the

receipts should be less, the party of the first part would make up the difference. The agreement further provided: "That it is mutually agreed by both parties to this contract that there be no verbal agreement or other contract, existing between them and that this contract is subject to the approval of Morris Miller, either by mail or wire." There was a further provision that the party of the second part agreed to furnish newspaper advertising, proper illumination and the grounds known as the Ball Park. Pursuant to said agreement, the Moose Lodge advertised the coming of the shows. Miller Bros. Shows did not show at Moorefield on the dates contracted for. A suit was entered by the appellee, plaintiff below, against the appellant, defendant below, on the common counts with a special count alleging the execution of the aforesaid contract and attaching the contract to the declaration. The suit was for $250 and a judgment was given by the court sitting as a jury for that amount. The appeal is taken from that judgment.

The appellant excepted to the ruling of the court in rejecting his two prayers which were demurrer prayers offered at the end of the plaintiff's case and again at the end of the whole case. The question for our decision is should the demurrer prayers have been granted.

The evidence offered in chief by the appellee shows that the appellant did not appear on the dates set forth in the contract, although the appellee was ready and willing to comply with the terms of the contract on its part. They had hired the ball park, put up wires for electricity, and advertised the shows at a cost of eight dollars and were ready to do anything else. Maurice Miller, the appellant, when called by appellee, testified that he was the manager of Miller Bros. Shows and that he was the show, that he recognized Mr. Murray's signature on the contract, that he had sent Murray to book shows two weeks ahead, that the contract in the case was given to Murray with knowledge that he would negotiate agreements with various organizations and sign them as general agent for the firm. He further testified that

Morris Miller whose name appears in the contract had been dead since June 27th, 1940, that the said Morris Miller was president of the company and his father, and that since his death, he, Maurice Miller, took the matter over. The appellee also offered in evidence the following letter:

"August 14th, 1940
"Frostburg, Md.

"Mr. William Grafton,
  "Moose Lodge,
  "Moorefield, W. Va.
"Dear Friend Bill:
  "Am writing you to let you know will join the show this coming Sunday at Meyersdale, Penna. Fair when they pull in from Oil City, Penna., and as soon as the office wagon rolls in will get those passes and mail them to you. That was wonderful publicity that you got in the Cumberland paper. I sent a copy of it to the show. I talked over long distance with the Boss. Everything is Okay, Bill and our billposter will be with your man within the next ten days. Yours for all success,
    "(Signed) Wm. C. Murray
      "Miller Bros. Shows,
        "Meyersdale, Penna."
  Also the following telegram:

"Meyersdale, Penn.
"August 24, 1940.
"W. D. Grafton, Sec. Loyal Order of Moose,
"Lodge 358, Moorefield, West Va.
  "Due to exorbitant state license impossible for us to approve contract you signed with William Murray. Kindly cancel same.
      "(Signed) Miller Bros. Shows."
  For the appellant, Maurice Miller testified that Miller Bros. Shows were not incorporated, and that when his father died, he took over the operation of the shows and that his father, Morris Miller, formerly acted as general manager and president of the company, and when his father died, he took his place. He further said that

Morris Miller, his father, owned the show and upon his death it passed to him, Maurice Miller, and to his mother, that he took over the operation of the show and that for all practical purposes at the time of the signing of the contract in this case and ever since, he had been Miller Bros. Shows. He testified on cross-examination that he did not know of the contract in this case until he got Mr. Murray's letter and that he then wired the appellee the telegram offered in evidence. We must note, however, that ten days elapsed between the date of the letter and the date of the telegram.

From the record, we are faced with a contract which provides among other things that "this contract is subject to the approval of Morris Miller, either by mail or wire," that Morris Miller had been dead at least six weeks before the signing of the contract, and this fact was known to appellant and not to appellee. However, the appellant in his brief contends that the person making the contract is the question to be determined, and not a mistake in name and that the contract should have been approved by Maurice Miller and that this approval was not given. It is not necessary therefore for this court to consider the provision for the approval of Morris Miller. Judge Pattison said in the case of *General Automobile Owners' Assn. v. State,* 154 Md. 204, at page 209, 140 A. 48, at page 51: "The test to be applied in determining the legal sufficiency of the evidence is whether it is of sufficient probative force to enable an ordinary intelligent mind to draw a rational conclusion therefrom in support of the plaintiff's right. *Parker v. Power,* 127 Md. 598, 96 A. 800; *Moyer v. Justis,* 112 Md. 220, 76 A. 496, and other cases." *Gutheridge v. Gorsuch,* 177 Md. 109, 112, 8 A. 2nd 885. Quoting *Porter v. Greenbrier Quarry Co.,* 161 Md. 34, at page 37, 155 A. 428, at page 429: "According to the settled rule in this state, for the purposes of a ruling on a proposal for a directed verdict against plaintiff, any testimony tending to support his right of recovery must be assumed to be true." Quoting *Francis v. Outlaw,* 127 Md. 315, at page 319, 96 A. 517,

at page 519: "In deciding this question, the court was first to assume the truth of all the testimony given to the jury, tending to sustain the plaintiff's right to recover, and of all inferences of fact fairly deducible therefrom." *Ætna Casualty & Surety Co. v. State,* 162 Md. 49, 56, 158 A. 45. Quoting *Fisher v. Finan,* 163 Md. 418, at page 420, 163 A. 828: "A prayer seeking to take the case from the jury, on the alleged ground of a total failure of evidence to support the plaintiff's case, will not be granted, if there is any evidence, however slight, legally sufficient as tending to prove it, that is to say, competent, pertinent and coming from a legal source, but the weight and value of such evidence will be left to the jury." *Roycroft v. Nellis,* 171 Md. 136, 141, 188 A. 20. The fact that the appellant testified that Murray negotiated agreements as a general agent for the firm, that appellant testified that he was the show, and Murray by letter notified appellee that he had talked over long distance with the boss and "everything is Okay," was sufficient to justify the court in rejecting the demurrer prayers on the question as to whether the contract was approved by Maurice Miller.

The other contention of the appellant is that there is no evidence to show that appellee ever authorized the contract or that they ever gave any one authority to sign it, and further that appellee could not bring suit. Code 1939 art. 23, sec. 123, provides in part as follows: "Every unincorporated association or joint stock company having a recognized group name may sue or be sued in such group name in any action affecting the common property, rights and liabilities of such association or joint stock company." We must note that the execution of the contract is not denied by the next succeeding pleading of the opposite party. Code 1939, art. 75, sec. 28, sub-sec. 108. The appellee accepted the contract. An acceptance may be indicated by acts as well as by words. *Duplex Envelope Co. v. Baltimore Post Co.,* 163 Md. 596, at page 605, 163 A. 688. Testimony was offered for the plaintiff by the secretary of the Lodge that he

signed the agreement on behalf of the Lodge, that the appellee was ready and willing to comply with the terms of the contract on their part, that the appellee had hired the ball park, put up the wires for electricity, advertised in the newspaper, and was ready and willing to do anything ·else that it had to do. It was said in the case of *Duplex Envelope Co. v. Baltimore Post Co., supra,* 163 Md. at page 606, 163 A. at page 692: "Furthermore there was evidence from which the jury could have found that, although the plaintiff was able, ready, and willing to perform, and did perform, so far as was permitted, its promises, the defendant repudiated the contract. Consequently the plaintiff was entitled to recover at least nominal damages, and there was error in granting a prayer to take the case from the jury. * * * Therefore, on the proof and under the terms of the contract, the plaintiff was merely entitled to the minimum amount as prescribed in the contract." The agreement in the case now before us fixed the minimum at $250.

The court was correct in rejecting the demurrer prayers directing the withdrawal of the case from the court, sitting as a jury.

*Judgment affirmed, with costs.*