# LESTER E. BARNES et al.

## vs.

# UNITED RAILWAYS AND ELECTRIC COMPANY.

*Damage to Personal Property—Value of Use—Rights to Sue—
Vendor and Pledgee—Speed of Street Car—City
Ordinance—Appeal—Evidence.*

One cannot complain on appeal that a particular question was allowed to be answered by a witness, if he had previously testified to the same effect, and did so subsequently without objection.                                    p. 16

In an action for injury to an automobile truck, plaintiff cannot, after introducing evidence that the truck was a total wreck, show the expense which he incurred in hiring other trucks in its place, since if he recovers the value of the truck, as for a complete destruction, he cannot also recover the value of its use.                                    p. 17

Baltimore City Ordinance, approved May 12th, 1893, limiting to six miles an hour the speed of street cars when crossing an open street within the city limits, applies without regard to whether the city owns the bed of the street at the crossing.

p. 17

The Annexation Act of 1918, ch. 82, extending to the annexed territory all the existing ordinances of the city, made applicable to that territory an existing ordinance limiting the speed of street cars at street crossings.                                    p. 18

In an action against a street railway company for damage to an automobile truck caused by the collision therewith of one of defendant's cars at a crossing, *held* that, under the evidence, the question of defendant's negligence was for the jury.

pp. 19-21

The vendor of an article, retaining the title thereto until payment of the price, but allowing the vendee the use thereof as bailee, is entitled to bring an action for damages against one wrongfully injuring the article.                                    p. 22

One to whom an article is pledged as collateral security, with an express transfer to him of any claim for damages arising out of any injury to the article, may sue for injury thereto.

p. 22

One's right to recover for injury to his property is not affected by the fact that the property was insured against such injury.

p. 23

*Decided January 11th, 1922.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.)

Action by Lester E. Barnes, the Finance and Guaranty Company, and the Seitz Auto Company, against the United Railways and Electric Company of Baltimore City. From a judgment for defendant as against the Finance and Guaranty Company and the Seitz Auto Company, they appeal. Reversed.

The question involved in the first exception was one asked of the vice-president of the Seitz Auto Company as to what interest his company had in the suit, to which he answered that it had none.

The matter involved in the second exception was as follows: The plaintiff Barnes having testified that, after the accident, "the general condition of the truck was a general wreck," plaintiff's counsel then sought to examine him as to expense incurred in the hiring of other trucks to take the place of that destroyed, which the court refused to allow.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, and OFFUTT, JJ.

*S. Ralph Warnken* and *Hilary W. Gans,* for the appellants.

*R. Lee Slingluff* and *J. Pembroke Thom,* for the appellee.

Briscoe, J., delivered the opinion of the Court.

This is a negligence case, and the questions which we are required to consider arise upon four exceptions, reserved by the plaintiffs in the course of the trial. Three of these were to the rulings of the court on the admissibility of evidence, and the fourth to the action of the court at the close of the plaintiffs' testimony in granting the defendant's first prayer, which instructed the jury that there was no evidence in the case legally sufficient under the pleadings to entitle the plaintiffs to recover, and that their verdict must be for the defendant.

The suit was brought by Lester E. Barnes, the Finance and Guaranty Company, a body corporate, and the Seitz Auto Company, a body corporate, against the United Railways and Electric Company of Baltimore, a corporation, to recover damages for injuries to an automobile truck and its equipment, while proceeding to cross the tracks of the defendant, at the intersection of Summit Avenue and Park Heights Avenue, two of the public highways of Baltimore City.

The *narr* avers that the collision with said truck and the damages thereto were directly due to the negligence of the defendant, in that the street car was being operated in a careless and reckless manner, and at an improper and unlawful rate of speed.

At the conclusion of the testimony on the part of the plaintiffs, a *non pros* was taken as to the plaintiff Lester E. Barnes, and a verdict was rendered in favor of the defendant as to the other two plaintiffs, the Finance and Guaranty Company and the Seitz Auto Company, under instructions from the court.

From a judgment on the verdict in favor of the defendant for costs, two of the plaintiffs have taken this appeal.

There was no reversible error in allowing the question to be asked and answered in the first exception. The witness had previously testified to the non-interest of his company in the suit, and subsequently, without objection, he also testified that his company had no financial interest in the result

of the suit. The plaintiff was not, therefore, injured by this ruling. *Hall* v. *Trimble,* 104 Md. 317.

The second exception is not material, on this appeal, in view of the *non pros* as to the plaintiff Barnes, and need not be considered. Apparently, however, the ruling was correct, because if the plaintiff recovers the full value of the automobile, as for a complete destruction, he cannot also recover the value of the use. *Fisher* v. *City Dairy Co.,* 137 Md. 601; *Wash., B. & A. Rwy. Co.* v. *Fingles,* 135 Md. 574; *Crossen* v. *Chic. & J. Elec. Ry. Co.,* 158 Ill. App. 42; *Latham* v. *Cleveland, C. C. & St. L. Ry. Co.,* 164 Ill. App. 559; 2 *Sedgwick, Damages* (9th Ed.), par. 435a.

The third exception was to the refusal of the court to permit the introduction in evidence of Ordinance No. 157 of the Mayor and City Council of Baltimore, approved May 12th, 1893, limiting the speed of electric cars crossing open streets within the limits of the City of Baltimore to a speed of six miles an hour. The ordinance is set out in the record, and is as follows: "No traction, cable, electric or other city passenger railway car or cars not drawn by horse power shall cross any open street within the limits of the City of Baltimore at a speed greater than six miles an hour. For each and every violation of this section the offender, upon conviction thereof, shall be liable to a fine of five dollars and costs."

While this ordinance was repealed and re-enacted by Ordinance No. 592 of the Mayor and City Council of Baltimore, approved May 10th, 1921, it was in force at the date of the trial of this case, and there was error in refusing to admit it as evidence, under the ruling of this Court in *United Railways Co.* v. *Ward,* 113 Md. 656.

The object and purpose of this very ordinance, it was said in Ward's case, was to guard against accidents at street crossings, and to that end to prohibit those in charge of a car from crossing a street at a speed greater than six miles an hour, and was evidently intended to apply to the crossing of any

open street, within the city limits, whether the city owned the bed of the street at the crossing or not.

The language of the ordinance is "within the limits of the City of Baltimore," and by section 2 of the Annexation Act of 1918, ch. 82, it is provided that all the existing ordinances of Baltimore City shall be and the same are extended and made applicable to the annexed territory.

The place of the accident, in this case, was at the intersection of Summit Avenue and Park Heights Avenue within the city limits and, like the scene of the accident in Ward's Case, *supra,* where the ordinance was held to be admissible and applicable, was in a suburban section of the city, where the travel, according to the testimony, was both frequent and heavy.

It could hardly be successfully contended that the new Ordinance No. 592, approved May 10th, 1921, and passed in lieu of Ordinance No. 157, to regulate the speed of street cars when approaching and crossing any intersecting public highway or private street in the city, would not be applicable and admissible in evidence in accident cases, since the passage of the ordinance.

This Ordinance No. 592 provides that the person operating a street car, when approaching and crossing any intersecting public highway or private street, must have the car under control and must regulate the speed of the car according to what is reasonable and proper in view of the circumstances, surroundings and location; provided, however, that in crossing any such street or intersecting public highway or private street in the thickly congested or business parts of the city, such street car shall not be operated at a rate of speed exceeding fifteen miles an hour.

There was error, therefore, in the ruling of the court, in sustaining the objection to the introduction in evidence of the ordinance, set out in the record in the third exception, as it was proper evidence, and should have been admitted.

The fourth exception presents the rulings of the court upon the defendant's first and second prayers. Both of those

prayers were granted, but as the second prayer relates to the interest of the plaintiff Lester E. Barnes, and a *non pros* was taken as to him, the ruling upon this prayer becomes unimportant on this appeal.

The defendant's first prayer, however, was a demurrer to the evidence, and instructed the jury that there was no evidence in the case legally sufficient under the pleadings to entitle the plaintiffs to recover, and their verdict must be for the defendant.

The rule of law that must control, in the decision of negligence cases of this kind, has been so often and recently announced, in previous opinions of this Court, that it would answer no useful purpose to discuss it at length in this case.

The law is well settled beyond controversy, that greater care and caution is necessary to be exercised in running a car across the streets and thorough-fares of a city, than is required in crossing a highway in the open country, and in cases where there is a conflict in the evidence, as to whose negligence caused the injury, the question is one for the consideration of the jury, and not for the court to determine as a matter of law. *Baltimore Elevator Co.* v. *Neal,* 65 Md. 438; *Burke* v. *Baltimore,* 127 Md. 560; *United Railways Co.* v. *Ward,* 113 Md. 655.

In this case, a review of the plaintiffs' testimony shows that the accident occurred about one o'clock in the day, on November 8th, 1919, at the intersection of Summit Avenue and Park Heights Avenue, in the new annex of Baltimore City. Park Heights Avenue runs north and south and is one of the public highways of the City of Baltimore, and the automobile truck was struck by a south bound car while in the act of crossing the tracks of the defendant in order to proceed easterly on Summit Avenue, and across Park Heights Avenue.

The witness Myers, the chauffeur of the truck, testified that on the day of the accident he was driving the service truck south on Park Heights Avenue, that is, coming toward the city; that street car tracks run on Park Heights Avenue and

vehicles cannot come down this avenue east of the car tracks, but must proceed on the west of the tracks, the railway tracks being east of the traveled portion of the road, and that he was driving south on Park Heights Avenue, holding his hand out to the traffic behind him, as some were going north on the avenue, and just as he made the turn across Park Heights Avenue at Summit Avenue, he looked around, but did not see a car and, just as he got on the car track, his front wheels on the center of the first track, he noticed the car coming. He tried to speed across, but there was nothing for him to do, and the car struck his machine about the center and knocked it about twelve or fifteen feet against the telegraph pole. There was no gong sounded or other signal given by the car, as it approched the crossing, and it was running at a good rate of speed, about thirty miles an hour. The races were on at Pimlico and the travel on Park Heights Avenue was heavy for both automobiles and street cars, and there were crowds going out to the races.

He further testified there was no bend in the car tracks going south on Park Heights Avenue until they got beyond Oakley Avenue, which is a distance of more than two city blocks, so that one approaching Summit Avenue going south has a clear view of the vehicles on Park Heights Avenue at or near Summit Avenue for several squares.

The testimony of the witness Myers was substantially corroborated by that of the witness Root, who was walking north on Park Heights Avenue, about twenty-five feet from Summit Avenue, at the time the collision occurred, and who saw the automobile truck as it turned to go across the car track. He testified in part as follows:

"Q. What was the first time that you saw it? A. I was walking by there and I saw this fellow hold out his hand, saw Mr. Myers hold out his hand, and then I saw him look north on Park Heights Avenue to see whether there was anything coming, and there was a couple of machines going north on Park Heights Avenue, and he waited for them to get by,

and then he started to go across the track; then he started to make the turn to go into Summit Avenue. Q. Well, now, when he started to cross Park Heights Avenue how far was the street car away? A. Why, I should judge it was about a square or a square and a half away. Q. And when his front wheels got on to the car track about how far was the street car away? A. I should judge it was about a half a square or a little less away. Q. How fast was the street car coming when you say it was about a square and a half? A. I should judge it was coming from anywhere from twenty, twenty-five, or something around that speed. It was coming at a pretty good speed. Q. You say when the truck got its front wheels on the track the street car had not reduced its speed any? A. Not any that I could notice, no, sir. Q. That you could notice. And going around twenty to twenty-two miles an hour. Now, between that point and the striking of the truck did it decrease? A. Not any that I could notice, no, sir. Q. Did you hear any gong or other signal given by the street car? A. No, sir, I did not. Q. What effort did the motorman make to stop his car, if any, if you noticed? A. Why, I saw the truck turn there, and the car was coming down there at a pretty good clip, and, well, I should judge, when he was about a length away from the truck, I guess he saw the accident was inevitable, so he and the driver of the truck—well, about a second before the car hit it he jumped out, and I saw the motorman step back about a foot from the controller. There was nothing to prevent the motorman from seeing the truck from the time he started across the road until he actually got on the tracks. Q. At what rate of speed was the truck going? A. I should imagine the truck was going about anywheres from about two to three or four miles an hour—something around there."

We have thus stated and set out, at a greater length than usual, the testimony of the witnesses Myers and Root, the only two eye-witnesses to the accident and the collision, because we are of opinion, after a careful examination of their

testimony and the other facts disclosed by the record, that the question of negligence *vel non,* in this case, was one for the consideration of the jury, and not for the court to determine as a matter of law.

The court below, we think, upon the testimony disclosed by the record in the case, committed an error in granting the defendant's first prayer, withdrawing the case from the jury and in instructing them, as a matter of law, that there was no evidence legally sufficient to entitle the plaintiffs to recover, and their verdict must be for the defendant.

The question of the right of these appellants to bring and maintain this suit, to the extent of their interest in the property, we think, under the authorities is free from difficulty.

The relation and interest of the parties to the property was created and fixed by the parties themselves and is expressed in the contract itself.

The Seitz Auto Company reserved an interest in and to the property and had a right to sue to recover damages for an alleged injury to that interest. 6 *Corpus Juris,* sections 106-111, pages 1147-9.

By the transfer and assignment from the Seitz Auto Company to the Finance and Guaranty Company, the latter company took such an interest as permitted it to bring an action for damages against any one who wrongfully injured the property. 31 *Cyc.* 847-848.

By the assignment dated October 21, 1919, the following transfer will appear:

> "as collateral security for the endorsement of the note * * * all the right, title and interest to the one used Service truck * * * and of the undersigned (Seitz Auto Company) in the within contract * * * with clear title in the undersigned, * * * and in and to the note given to evidence the payments in the within contract mentioned * * * in and to any claim for damages otherwise arising out of or based upon any injury to * * * said property * * * ."

The fact that the truck was insured does not disentitle the appellants to maintain this suit.  *City Pass. Rwy. Co.* v. *Baer,* 90 Md. 108; *American Paving Co.* v. *Davis,* 127 Md. 477; *Chesapeake Iron Works* v. *Hochschild & Co.,* 119 Md. 303.

Because of the errors of the court below in granting the defendant's first prayer, and in its ruling on evidence, the judgment must be reversed, and the cause remanded for a new trial.

> *Judgment reversed, with costs, and case remanded for a new trial.*