**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 03-2227**

─────────

THE FOUNTAINHEAD TITLE GROUP CORPORATION, a
Maryland corporation,

                                    Plaintiff - Appellee,

        versus


COURTHOUSE SEARCH OF NORTHERN VIRGINIA, a
Virginia corporation,

                                    Defendant - Appellant.


─────────

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Leonie M. Brinkema, District
Judge.  (CA-02-1838-A)

─────────

Argued:  October 27, 2004          Decided:  January 27, 2005

─────────

Before WIDENER, WILLIAMS, and MICHAEL, Circuit Judges.

─────────

Affirmed by unpublished per curiam opinion.

─────────

**ARGUED:** Brian Timothy Fitzpatrick, SIDLEY, AUSTIN, BROWN & WOOD,
L.L.P., Washington, D.C., for Appellant.  Stacey Ann Moffet,
ECCLESTON & WOLF, P.C., Baltimore, Maryland, for Appellee.  **ON
BRIEF:** Eric Jensen, JENSEN & ASSOCIATES, P.C., Richmond, Virginia;
Frank R. Volpe, SIDLEY, AUSTIN, BROWN & WOOD, L.L.P., Washington,
D.C., for Appellant.  Matthew W. Lee, ECCLESTON & WOLF, P.C.,
Washington, D.C., for Appellee.

─────────

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

In this diversity action, Courthouse Search of Northern Virginia (Courthouse) appeals a jury verdict in favor of Fountainhead Title Group Corp. (Fountainhead) for $200,000 on negligence and breach of contract claims. Courthouse argues that the evidence was insufficient to sustain the jury's negligence verdict and that Fountainhead waived its right to the collateral source rule for both claims by introducing evidence that it recovered $175,000 from its insurer. For the following reasons, we affirm.

## I.

Fountainhead is a mortgage settlement and title insurance company with its headquarters in Maryland and offices in several neighboring states, including Virginia. In 2000 Fountainhead was hired as settlement agent for a $200,000 secondary mortgage loan from Champion Mortgage (Champion) to Luis Quinonez. The loan was secured by real property in Virginia owned by Quinonez. Fountainhead contracted with Courthouse to perform a title and judgment search and to record the deed of trust against Quinonez's property.

Courthouse conducted three searches of Quinonez's property. The first search, performed on August 23, 2000, revealed no outstanding judgments against Quinonez as of July 31, 2000. On October 16, 2000, a second search showed a judgment against

3

Quinonez in favor of Bank of America for $1,039,007.43 that had been entered on August 25, 2000. Fountainhead ignored the second report, believing it to be a duplicate of the initial search, and conducted settlement of the loan on October 16, 2000. Following settlement Fountainhead asked Courthouse to conduct a "bring-to-date" title search before the deed of trust was recorded. On October 24, 2000, before the "bring-to-date" search, Fountainhead disbursed the loan proceeds to Quinonez. The next day, October 25, 2000, Courthouse performed the final search and did not uncover or report the Bank of America judgment or any other problems to Fountainhead. Courthouse also recorded the deed of trust in favor of Champion on October 25.

The following spring, Quinonez, who had not paid the Bank of America judgment, defaulted on the secondary mortgage loan from Champion. The value of the property was insufficient to pay both creditors, and Champion had no recourse against the property because Bank of America's judgment was recorded prior to Champion's deed of trust. Fountainhead agreed to cover Champion's $200,000 loss.

Fountainhead sued Courthouse for negligence and breach of contract in connection with Courthouse's failure to report the Bank of America judgment before recording the deed of trust. During the trial Fountainhead revealed that it had paid only $25,000 of the $200,000 to Champion and that its errors and omissions insurance

carrier had paid the remaining $175,000. The jury found in favor of Fountainhead on both its negligence and contract claims and awarded $200,000 in damages. Courthouse filed a motion for judgment notwithstanding the verdict, which was denied. Courthouse appeals.

## II.

Courthouse argues it was entitled to a directed verdict on the negligence claim either because Courthouse's breach did not cause Fountainhead's damages or because Fountainhead committed contributory negligence. In the alternative, Courthouse contends that Fountainhead's damages should have been limited to $25,000 because of the $175,000 payment Fountainhead received from its insurance carrier. Courthouse also argues that the substantive law of Virginia, rather than that of Maryland, governs the negligence claim. A court may grant a directed verdict against a party on any issue for which there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of that party. Fed. R. Civ. P. 50. We review de novo a district court's denial of a motion for judgment as a matter of law. Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999).

## A.

In a diversity action the choice of law rule of the forum state, in this case Virginia, determines which state's law governs each claim. Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044

5

(4th Cir. 1986).  Under Virginia law the substantive law of the state in which "the place of the wrong" occurred -- "defined as the place where the last event necessary to make an act liable for an alleged tort takes place" -- governs Fountainhead's negligence claim.  Id. (internal quotation marks omitted).  The district court held that Maryland law applied to the negligence claim because the last event necessary to make Courthouse liable to Fountainhead occurred in Maryland.  This event was Fountainhead's reliance on the bring-to-date search report that gave rise to Champion's claim against Fountainhead.

Courthouse does not dispute that Fountainhead's injury took place in Maryland, but argues that the termination of its services, not the injury, was the last event necessary to give rise to the cause of action.  Courthouse performed all of its services in Virginia, and its services concluded before Fountainhead suffered any injury.  Injury is an essential element to a negligence cause of action, and there is no support for the proposition that a cause of action for negligence can accrue before there is an injury.  The district court correctly determined that "[h]ad [Fountainhead] not relied on the results of defendant's search, it would have no cause of action for negligence." J.A. 50-51.  Because Fountainhead's reliance and injury occurred in Maryland, Maryland law governs the negligence claim.

B.

Courthouse argues it was entitled to a directed verdict on its claim of contributory negligence because Fountainhead disbursed the funds before the deed of trust was recorded. Similarly, Courthouse argues that Fountainhead's premature disbursement of the loan proceeds should have precluded a jury finding that Courthouse's breach was the proximate cause of Fountainhead's injury. For both arguments Courthouse primarily relies on a single Fountainhead witness, who testified that the company "should not have" disbursed the funds when it did. The same witness also testified, however, that Fountainhead would have taken action to reverse the disbursement of funds had Courthouse notified Fountainhead of the Bank of America judgment. Courthouse introduced no evidence on the question of whether the timing of Fountainhead's loan disbursement was a breach of any duty to Champion. Nor did it introduce evidence to rebut Fountainhead's position that it would have been able to stop the disbursement had it been notified of the Bank of America judgment by Courthouse. While the testimony from Fountainhead's witness could have provided the jury with a basis for ruling in Courthouse's favor on the negligence claim under either theory, the jury was well within its purview in holding that Courthouse's negligence caused Fountainhead's injury and that Courthouse had not met its burden of proof on the issue of contributory negligence.

7

Courthouse argues in the alternative that damages should be limited to $25,000 because Fountainhead waived the collateral source rule by introducing evidence that it had received $175,000 from its insurer. The collateral source rule permits an injured party to recover the full amount of provable damages regardless of any compensation received from collateral sources such as insurance. Kremen v. Maryland Automobile Insurance Fund, 770 A.2d 170, 174-75 (Md. 2001). Limiting Fountainhead's recovery to $25,000 would amount to a windfall for Courthouse because the jury found Courthouse caused $200,000 worth of damages. Courthouse concedes that a Maryland court has never held that a plaintiff waives application of the collateral source rule by introducing evidence of recovery for its damages from collateral sources. We conclude that the district court correctly applied the collateral source rule in this case.

                                  III.

We affirm the judgment based on the jury's verdict of $200,000 in favor of Fountainhead on its negligence claim. Because the jury's award compensated Fountainhead for "either or both" of its two claims, we need not reach Courthouse's arguments on the breach of contract claim.

                                                    AFFIRMED